The Louisiana Bar Association is working on entwining with the Court of Cassation in France. This is Leclerc v. Webb, and there's a proposal to allow lawyers from France and Quebec and Louisiana to reciprocally practice in each other's jurisdiction without the necessity to go to a bar exam. So it's somewhat of a vindication of the position that she took almost 15 years ago. All right. I appreciate you knowing that. I need all the vindication I can get. Also, there's a Second Circuit case that set up a conflict in rejecting Leclerc v. Webb by name. All right. Mr. Curry, you are counsel, but you're also a guest sort of pro. Oh, yeah. I was the person who got it. You're sort of pro se here, right? All right. Okay. I wonder if there was an inability to count five working days. I wonder if that's a factual error or a legal error. Why don't you hit first off? Counsel opposite straightforwardly says we don't have jurisdiction here because this is not a final order from the district court, and if we don't have jurisdiction, it will never get to the other matters that you raised. So help us understand why, if at all, we have jurisdiction to even consider these other matters. That's a fair start. They didn't apply for fees. I'm sorry? They did not apply for fees. It wasn't up to me to apply for fees. Rule 54 and the local rule 54 requires applications for fee in 14 days, and local rule 54-2 and 54-3 requires application within 30 days. So they didn't apply for fees. So the matter would have just kept pending. So I did the research on it, and I felt as a third party that I had the right to file a collateral order appeal. And the fact that they can't get fees now. It's too late. There's a case directly in point, the Walker case, which I cited. I can get the citation for you, but it's a Walker. Keep going. Okay, the Walker case that I cited. In other words, at this particular point, they can't get fees. So the only issue here is whether I can vindicate my good name, however difficult that may be, by taking an appeal from what was obviously a decision that was incorrect. Is the case still administratively closed? Yes. How will it get reopened? It's never going to get reopened. Unless this is resolved, it will never get reopened. Poor Elanio Cruz and his daughter will be stuck off in Kafka limbo for forever. So I had to do something. I mean, you can't go back to district court and say, well, there's nothing to pay because I didn't file a fee application, so you need to reopen the case and move on. District court and I have always been competitive since I've been practicing. Judge Feldman had ridiculed me. He was unhappy that we settled with the city for $75,000. He seemed to be outraged at the fact that I went on vacation and left the case in the hands of two supposedly competent lawyers that all I had to do was to file exhibits on time. I'm not going to get any sympathy from Judge Feldman. Well, it seems like you've got some obligation to get your case reopened. Well, I didn't know what to do. So what I did is I did, as you can see in the notice of appeal, I did research. This is a collateral order. I also knew that there was a limited period of time within which to apply for . . . I was just curious about what's going on in the trial court. Nothing. Because . . . It's just sitting. What's your case about? Fulton was off duty, and there was a very slight accident, and it could be that Mr. Cruz didn't know it. So Mr. Cruz goes to his house. Fulton comes out, pulls out a gun, pistol whips him, puts the gun to his head. His daughter says, No, no, don't kill my daddy. And then it goes on from there. So it's a pretty egregious case. He wasn't working for the city at that particular time, which is why we were able to settle with the city for $75,000 and not more. So the only issue was whether Fulton, who obviously battered the guy and scared to death out of Melissa, was liable. I mean it was a pretty straightforward case. There was no question, but he did it. He got disciplined by the Internal Affairs. They fired him. I don't know what happened with the Civil Service. But it was a pretty clear-cut case. It wasn't rocket science. I mean the only thing that screwed it up was Adam Lambert's unwillingness, and I don't know why, to let my office give this guy paper copies, which he was entitled to. Hessler's entitled to paper copies. Hessler's a paper copy guy. You don't send electronic things to an old-timey lawyer who's a paper copy guy. I knew that. My problem was I was in Dominica, and Hurricane Matthew was going up, and the lights were going out, this kind of stuff. And so I was on the plane the Wednesday when the bad stuff happened. I thought to myself, 400 pages. I mean it's a trivial amount of paper in a case. Why in the world wouldn't Adam Lambert let my people give Eric Hessler the 400 pages of exhibits? Why did he wait? Instead of doing it on the Friday, which he could have, why did he wait until after the Saints game on Monday night to sign on it? Why did we get the papers on the Tuesday? As it was, I negotiated with the district court's clerk from Dominica an extra day to do it. On the Tuesday, my troops did file the exhibit book. But of course, but you know, I had three competent lawyers. Adam Lambert was the plaintiff's lawyer. I only got into the case to help. And so, you know, I did jury charges. I did oppositions. I did everything I possibly could from Dominica. But I couldn't physically bring paper. But you didn't tie all that down with him, what he was supposed to do before you left? Sure I did. Absolutely. He was the one to do it, and you'll see the September 26th email where he says he's finally getting on it. Oh, I'm saying before you left to go on your trip. Oh, sure. I said, you know, yeah, I had assigned to him the duty of doing that. He was the one who sat through the criminal trial. He had all the paperwork. He had everything that was applicable to do. I couldn't do it. I didn't have that.  And I wrote everybody a note. And I said, I'm leaving. You know, I can do this and I can do that, but I can't hold your hand. You know, now, I wish it had gone differently. It never occurred to me that a lawyer that I had been working with for 15 years would so radically fail to do the scheduling order. What did he fail to do? The exhibits were due on the Monday, five working days before the Monday. Okay? He didn't have his exhibits ready. He was supposed to drop off his exhibits to us, and he didn't start until after the Monday Night Saints game. And he got them to us on Tuesday, and by the grace of God, we got them to Judge Feldman's office at, like, 429 on Tuesday. But we were told not to give a paper copy to Hessler and to give him an electronic copy because Adam wanted to save money. I thought, this is just, I didn't even know. You know, I was kind of stuck in Dominica with Hurricane hooking up at that point, and so I couldn't intervene. But certainly, that's not contempt. That's not intentional. I have very competent people in my office, but I told them to do what Adam Lambert said. I mean, they're not about to controvert that. I thought the whole thing was peculiar, but I didn't really know what was going on. I knew we had to get copies of that. Now, I had SugarSync, and I had access to all the material, but I didn't step in. I didn't understand what was going on. So, this is just not a situation of contempt. You had trouble with Judge Feldman before in this case? A little bit. He acted like he was getting impatient with you. He was very impatient with me. He didn't like it at all, the fact that he told me that he wouldn't accept a settlement of $75,000. I went ahead and negotiated with the city, but he signed the motion to dismiss. So, yeah, Judge Feldman was very impatient with me and was not pleased that I would be gone the week before. Was his impatience with you justified in any way? I'm a good guy. I understand how things work. When state police stop me on the road, I'm very cordial. I understand what's going on. Good guys can be very irritating and aggravating as well as bad guys. I learned a long time ago that it didn't do you any good to do that, and that into every life a little rain must fall, and the days that it didn't, you'd rejoice. So I did what I could. Didn't look like you helped. You all have any questions? I think we wrote pretty good briefs. All right. I'm happy to answer any questions that you may have. All right. We have saved some of our time. Let's hear from Mr. Mulally. Thank you. Good morning. May it please the Court. I'm Jim Mulally, and I represent Mr. Feldman in this matter. We take issue, as Judge Stewart rightly said, with the jurisdiction in this matter. Quite honestly, and I'd be happy to address that or some practical considerations, if you all have questions about that. Go to the jurisdiction. Okay. The jurisdictional issues is playing out. I didn't hear anything from the appellant. I didn't read anything in the appellant's brief that would give this court jurisdiction. I think it's uncontested. He says it's collateral order. I think is what his response was. I'd be happy to start there, Your Honor, yes, because he certainly didn't petition. He either disrecorded this court for a certification of the issue as a collateral order pursuant to 28 U.S.C. Section 1292 or Federal Rule of Appellate Procedure 5. So I guess reading his brief, he's trying to bootstrap this under the Cohen doctrine, if you will. It's Cohen v. It's 337 U.S. 541. As I understand it, we would have jurisdiction to hear his appeal if this is civil contempt and he is a non-party. Is that correct? I read some cases to that effect, Your Honor. He's not a party, is he? He is just the attorney. He is just the attorney, but as I understand those cases, I can't recall offhand any precise case that the court is referring to, but I did read one case cited by the plaintiff that held that an attorney could seek appellate review of a civil contempt order where that attorney was no longer in the case, could not follow the case, and would have no other redress. And that would kind of follow some of the particularly element four of the Cohen factors. But here, the basis for the contempt citation is independent of the merits of the case itself. That's correct, Your Honor. And the district court has had the effect of administrative of closing the case, which imposes a burden on the plaintiff that he is not responsible for. It seems to me that the interests of the attorney in this case makes him, or the lack of the, let's just say the independence between the cause of action and the plaintiff and the embroilio that the lawyer is in now with the court are sufficiently different. It makes him a non-party for the purposes of this appeal. Your Honor, believe me, I wish I could find a case, and I looked and looked and looked, where a court administratively closed a case pending a plaintiff's attorney's compliance with a sua sponte sanction order where it imposed damages that weren't even sought by the opposing party. I could not find that case. For purposes of my argument today, if I spot him that the court's got jurisdiction, I still find – I would still argue that under Southern Travel Club, the issue is not right for appeal because it's not been reduced to some certain. Well, there's no possibility that it can be at this point, right? Well, I think it could. I think that the plaintiff could have – we could have gone to form magistrate or petition the district court and determined what the sum ought to be. But he's not required to do that. But it's odd, Your Honor, because, again, I couldn't find a case on point. The district court's order administratively closed the case pending plaintiff's proof to the district court that there had been compliance with the district court's order vis-a-vis sanctions. But there's not – y'all have not said what your fees, costs, expenses were. We did. We did, not before the court, but we certainly sent that. It's not in the record, Your Honor. There's nothing on the record on this case, but there was a December 15th. We can always move for the court to reopen the case. It has not been dismissed. It's just been administratively closed, which is completely different from the dismissal of the case. That was my initial argument in my brief. You're right, Your Honor. I think that probably the proper thing would be to do would be – nor would the appellant be without an appellate right once there was a sum certain set by the district court that would then be immediately appealed. Well, I mean you could ask for a hearing. I'd like to have a hearing to prove up the specific amount of the fees and costs I've incurred as per the judge's order. Your Honor, I believe I could do that. I believe the plaintiff could do that. What happened in this case was we tried to work it out with the plaintiff. Of course, it suits you for the case to be administratively closed forever. Well, it does and doesn't. I mean our client certainly doesn't want it open and pending and out there ad infinitum either. I mean that wouldn't benefit anybody. What happened in the case is there was – we reached – What's left in the case? Trial. Okay. On the issue of liability on the basically simple battery tort. He said we reached. What have you reached? We made numerous attempts. Again, it's not on the record because there was no record made. But we made repeated attempts to reach out to the plaintiff, reduce the fees that we were going to request in writing, sent it to him, I believe, on December 15, 2016. Multiple phone calls to his office, let's try and work this out. Let's try and get in front of the district court. Let's go to the magistrate. We agree with you that we're – and I'm quite frank with the court. We're probably not entitled to everything that the district court said we're entitled to. So let's get before the district court and try and work this out. That's why you don't see the plaintiff make much of an argument regarding plaintiff's claims that the court's order of sanctions exceeded the court's discretion. Putting aside any cause, as I understand, his argument is that he doesn't deem that he is engaged in any kind of sanctionable conduct. He's refuting the very imposition of the sanctions. Putting aside it being granted and what might be owed, as I understand, maybe I'm misunderstanding, but a lot of what he said that's maybe somewhat collateral would be to make the case that he didn't do anything wrong. If something was done wrong in terms of the whole exhibit, that that was someone else, although he does acknowledge he's lead counsel, so to the extent that one might say there was, it's him. But I think his view is taken at its worst, it's not contemptible conduct. Not done in bad faith, boom-de-boom-de-boom, whether that is or isn't. But I think at the heart of what he's telling us is he doesn't deem that even taken at its worst is contemptible conduct within the realm of our cases. Yes, sir, Your Honor, and that's what kind of puts me in the unenviable position of being here defending the district court's sua sponte order. We didn't move for sanctions. I mean quite frankly, going back to the time of occurrence, we were just trying to get the exhibit book. And then we were ready to go to trial, and the judge sua sponte issued the order that he issued. We didn't show up. I think we showed up at one of the hearings, but we didn't present any papers, any evidence. There was no record made by us asking for any sanctions against the plaintiffs. So, again, it's kind of a unique situation. I hope that kind of answered your question, but I do want to get back because really what we're contending is all roads lead back to jurisdiction. That would be a great argument to take up on appeal. And I don't even think – quite honestly, if we went before the district court on the issues of what sanctions, if any, are due, well, the district court already denied his motion for re-hearing that. But I don't think this would be here or should be here, quite frankly. I think that if – there's probably conduct, I think plenty of people need to admit, that the books weren't there. There were some deadlines missed. There was sanctionable conduct, but perhaps not such that would warrant the relief given by the district court, the attorney's fees dating back to the time of the original complaint. So I think – and that's why we reached out to plaintiffs before the present appeal many times. Just go to the magistrate and settle this matter. Move on. And I think that, back to Judge Owen's point, that could probably be done by any party. I disagree with Plaintiff's assessment that we were precluded from seeking fees pursuant to, he's arguing, Local Rule 54. That doesn't set a time frame. I imagine he's probably trying to refer to Federal Rule of Civil Procedure 54, which the courts have held it doesn't apply to sanctions under – even if we had moved for them, which we didn't. So I think at the end of the day, that's what our principal argument is. Under Travelers, it's not a ripe appeal because it's a decision. It seems to me that we could plausibly hold that we have jurisdiction on the basis of a non-party and civil contempt, but decline to rule on it because, at this point, because it had not been reduced to a sum certain, send it back to have it reduced to a sum certain. You have a hearing before him. He reduces it to a sum certain and also say that it's an inappropriate sanction to administratively close the case because, since the interest is divergent, plaintiff shouldn't be burdened with the sins of the lawyer. See what happens then. Your Honor, I don't disagree with a single thing you just said. I mean I think that really, if I didn't articulate it as well as you just did, that was principally my argument is that it hasn't been reduced to a sum certain if we were before the decision. Well, it wasn't your argument in terms of there being jurisdiction. Well – I mean the premise there would be that there is the arguable basis of jurisdiction because of the non-party. And I understand the line of cases. Technically, in your brief, you take the view there is no jurisdiction, right? But I can understand that. But you understand the argument and don't vehemently protest against that articulation given this is kind of a tweener sort of case. That's correct, Judge. Yeah. With that, I don't really have anything else unless you have any further questions. Okay. No. Thank you. Thank you. All right. Mr. Cormier, any final – I have very little to say. I certainly don't think this is a Rule 38 case. Sorry? I don't think this is a Rule 38 case. So I think if anybody has any questions. Anyway, you go back. You go back. The judge enters an order against you for sanctions in a specific amount. And he says, I'm going to put you in jail if you don't pay it instead of the administrator to close the case. You going to come up with the money somewhere? I have money. Even though being a plain floral and coming to the Fourth and Fifth Circuit, which is the death of Pope, I still have money. All right. Well, we will delightfully hope that we never see this case again, whatever happens. Oh, I don't know. I would enjoy it. We'll dispatch Judge Jarvis solo. All right. Thank you, Counsel. Everybody have a Merry Christmas. Merry Christmas to you.